**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWARD W. URBAN, Individually and On Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| GW PHARMACEUTICALS PLC, JUSTIN D. GOVER, and ADAM DAVID GEORGE, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Edward W. Urban ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GW Pharmaceuticals plc ("GW Pharmaceuticals" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired GW Pharmaceuticals' American Depositary Receipts ("ADRs") between December 4, 2014 and January 8, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     GW Pharmaceuticals is a biopharmaceutical company.   Together with its subsidiaries, GW Pharmaceuticals engages in discovering, developing, and commercializing cannabinoid prescription medicines.  The Company operates in the United Kingdom, Europe, the United States, Canada, and Asia.

3.     GW Pharmaceuticals was founded in 1998 and is based in Cambridge, the United Kingdom.  The Company's ADRs trade on the NASDAQ under the ticker symbol "GWPH."

4.     Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company lacked effective internal financial controls; (ii) the Company lacked effective controls over completeness and valuation of clinical trial accruals; and (iii) as a result of the foregoing, Defendants' statements about GW Pharmaceuticals' business, operations, and prospects were false and misleading and/or lacked a reasonable basis at all relevant times.

5.     On January 10, 2016, *The Sunday Times* reported that GW Pharmaceuticals had disclosed in its annual report for the fiscal year ended September 30, 2015 (the "FY 2015 20-F"), filed with the SEC the previous month, that its internal financial controls were not effective as of

September 30, 2015, and further disclosed that management had determined that it lacked effective controls over the completeness and valuation of clinical trial accruals.  Specifically, the 2015 20-F reported that management lacked sufficiently precise controls: (1) to evaluate the completeness and accuracy of the calculation of clinical trial accruals due to the incorrect allocation of expenditure to clinical studies; or (2) to ensure completeness of clinical trial accruals in connection with contractual progress payment liabilities.

6.      On this news, GW Pharmaceuticals stock fell $3.55, or nearly 6%, to close at $56.31 per share on January 11, 2016.

7.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

10.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company's ADRs trade on the NASDAQ, located within this District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired GW Pharmaceuticals securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant GW Pharmaceuticals is an Ireland corporation with its principal executive offices located at Sovereign House, Vision Park, Cambridge, CB24 9BZ, United Kingdom.  GW Pharmaceutical's shares trade on the NASDAQ under the ticker symbol "GWPH."

14.     Defendant Justin D. Gover ("Gover") has served at all relevant times as the Company's Chief Executive Officer and Executive Director.

15.     Defendant Adam David George ("George") has served at all relevant times as the Company's Chief Financial Officer, Company Secretary, and Executive Director.

16.     The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     GW Pharmaceuticals is a biopharmaceutical company.  Together with its subsidiaries, GW Pharmaceuticals engages in discovering, developing, and commercializing cannabinoid prescription medicines.  The Company operates in the United Kingdom, Europe, the United States, Canada, and Asia.

18.     GW Pharmaceuticals was founded in 1998 and is based in Cambridge, the United Kingdom.  Its shares trade on the NASDAQ under the ticker symbol "GWPH."

**Materially False and Misleading Statements Issued During the Class Period**

19.     The Class Period begins on December 4, 2014, when GW Pharmaceuticals filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended September 30, 2014 (the "FY 2014 20-F").  For fiscal year 2014, GW Pharmaceuticals reported a net loss of £14.66 million ($23.78 million)[1], or £0.07 ($0.11) per diluted share, on revenue of £30.05 million ($48.73 million), compared to a net loss of £4.55 million, or £0.03 per diluted share, on revenue of £27.30 million for fiscal year 2013.

20.     In the FY 2014 20-F, GW Pharmaceuticals also reported Company-funded research and development expenditures of £19.19 million for fiscal year 2014, compared to £9.10 million for fiscal year 2013, and development partner-funded research and development expenditures of £24.29 million, compared to £23.56 million for fiscal year 2013.  The FY 2014 20-F included the following explanatory note regarding the Company's research and development expenditures:

> GW-funded research and development consists of payroll costs for research staff and associated overhead, cost of growing botanical raw material, research work and sponsorship of collaborative scientists, and external third-party costs incurred in conducting GW's own clinical trials.

> Development partner-funded research and development expenditures include the costs of employing staff to work on joint research and development plans, plus the costs of subcontracted pre-clinical studies and sponsorships of academic scientists who collaborate with the Group.

21.     The FY 2014 20-F further stated, in relevant part:

**Critical Judgments in Applying our Accounting Policies**

> In the application of our accounting policies, we are required to make judgments, estimates and assumptions about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and

---

[1] In the Company's SEC filings during the Class Period, GW Pharmaceuticals stated certain financial data in both United Sates dollars ("USD") and pound sterling ("GBP"), while stating other financial data only in GBP.  Here, financial data is stated in USD only to the extent that GW Pharmaceuticals stated that data in USD in the relevant SEC filing.

associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

Our estimates and assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognized in the period in which the estimate is revised if the revision affects only that period or in the period of the revisions and future periods if the revision affects both current and future periods.

The following are our critical judgments, except those involving estimation uncertainty, that we have made in the process of applying our accounting policies and that have the most significant effect on the amounts recognized in our consolidated financial statements included elsewhere in this Annual Report.

### *Recognition of clinical trials expenses*

We recognize expenses incurred in carrying out clinical trials during the course of conduct of each clinical trial in line with the state of completion of each trial. This involves the calculation of clinical trial accruals at each period end to account for incurred expenses. This requires estimation of the expected full cost to complete the trial as well as the current stage of trial completion.

Clinical trials usually take place over extended time periods and typically involve a set-up phase, a recruitment phase and a completion phase which ends upon the receipt of a final report containing full statistical analysis of trial results. Accruals are prepared separately for each in-process clinical trial and take into consideration the stage of completion of each trial including the number of patients that have entered the trial, the number of patients that have completed treatment and whether we have received the final report. In all cases, the full cost of each trial is expensed by the time we have received the final report.

22.     The FY 2014 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the FY 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     On February 5, 2015, GW Pharmaceuticals filed a Form 6-K with the SEC announcing the Company's financial and operating results for the quarter ended December 31, 2014 (the "Q1 2015 6-K").  For the quarter, GW Pharmaceuticals reported a net loss of £3.4 million ($5.3 million), or £0.01 ($0.02) per diluted share, on revenue of £7.97 million ($12.41 million),

compared to a net loss of £2.82 million, or £0.02 per diluted share, on revenue of £7.49 million for the same period in the prior fiscal year.

24.     In the Q1 2015 6-K, GW Pharmaceuticals also reported research and development expenditures of £15.13 million ($23.56 million), compared to £9.15 million for the same period in the prior year.

25.     On May 13, 2015, GW Pharmaceuticals filed a Form 6-K with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q2 2015 6-K").  For the quarter, GW Pharmaceuticals reported a net loss of £7.50 million ($11.14 million), or £0.03 ($0.05) per diluted share, on revenue of £6.35 million ($9.43 million), compared to a net loss of £5.20 million, or £0.03 per diluted share, on revenue of £7.53 million for the same period in the prior fiscal year.

26.     In the Q2 2015 6-K, GW Pharmaceuticals also reported research and development expenditures of £15.36 million ($22.81 million), compared to £11.89 million for the same period in the prior fiscal year.

27.     On August 7, 2015, GW Pharmaceuticals filed a Form 6-K with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q3 2015 6-K").  For the quarter, GW Pharmaceuticals reported a net loss of £21.43 million ($33.64 million), or £0.09 ($0.13) per diluted share, on revenue of £8.63 million ($13.55 million), compared to a net loss of £6.98 million, or £0.03 per diluted share, on revenue of £7.61 million for the same period in the prior fiscal year.

28.     In the Q3 2015 6-K, GW Pharmaceuticals also reported research and development expenditures of £20.84 million ($32.73 million), compared to £10.17 million for the same period in the prior fiscal year.

29.     On August 7, 2015, GW Pharmaceuticals filed a Form 6-K with the SEC announcing the Company's financial and operating results for the quarter and fiscal year ended September 30, 2015 (the "FY 2015 6-K").  For the quarter, GW Pharmaceuticals reported a net loss of £12.23 million ($18.51 million), or £0.05 ($0.07) per diluted share, on revenue of £5.60 million ($8.46 million), compared to a net loss of £282,000, or zero per diluted share, on revenue of £7.42 million for the same period in the prior fiscal year.  For fiscal year 2015, GW Pharmaceuticals reported a net loss of £44.56 million ($67.41 million), or £0.18 ($0.27) per diluted share, on revenue of £28.54 million ($43.17 million), compared to a net loss of £14.66 million, or £0.07 per diluted share, on revenue of £30.05 million for fiscal year 2014.

30.     In the FY 2015 6-K, GW Pharmaceuticals also reported research and development expenditures of £25.46 million ($38.51 million) for the quarter, compared to £12.27 million for the same period in the prior fiscal year, and research and development expenditures of £76.79 million ($116 million) for fiscal year 2015, compared to £43.48 million for fiscal year 2014.

31.     The statements referenced in ¶¶ 19-30 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company lacked effective internal financial controls; (ii) the Company lacked effective controls over completeness and valuation of clinical trial accruals; and (iii) as a result of the foregoing, Defendants' statements about GW Pharmaceuticals' business, operations, and prospects were false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Emerges**

32.     On December 7, 2015, post-market, GW Pharmaceuticals filed an annual report on

Form 20-F with the SEC reiterating the financial and operating results previously announced in

the FY 2015 6-K (the "FY 2015 20-F").

33.     The FY 2015 20-F stated, in part:

> ***We had a material weakness in our internal control over financial reporting for the year ended September 30, 2015, which could result in our financial statements not being prepared properly.***
>
> Our management identified a material weakness and concluded that our internal controls over financial reporting were not effective as of September 30, 2015. A material weakness (within the meaning of PCAOB Auditing Standard No. 5) is a deficiency, or a combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis.  Our management determined that our control over the completeness and valuation of clinical trial accruals is not effective. Specifically, management does not have sufficiently precise controls to evaluate the completeness and accuracy of the calculation of clinical trial accruals due to the incorrect allocation of expenditure to clinical studies. Additionally, we have not established a sufficiently precise control to ensure completeness of clinical trial accruals in connection with contractual progress payment liabilities. A material weakness results in a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis. In the event that the material weakness described above led to our financial statements not being prepared properly (which we currently do not believe to be the case), we would be required to restate our financial statements, which could result in a loss of investor confidence and a decline in the price of our ADSs.

34.     The following month, *The Sunday Times* published an article entitled "Cannabis

outfit's accounting haze," addressing the Company's material weakness described in the FY 2015

20-F:

> A British company that makes drugs derived from the cannabis plant has admitted to a "material weakness" in its accounting practices.
>
> GW Pharmaceuticals, which uses the compounds found in cannabis to develop treatments for multiple sclerosis, epilepsy and cancer, said its internal financial controls were "not effective" as of September 30. GW made the disclosure in its

annual report, published last week, and said it could lead to a mis-statement of its results.

More specifically, the problems related to the "accuracy of clinical study budgets" — a fundamental consideration for any drug developer. GW said it failed to identify payments it was due as a result of reaching certain milestones in trials.

35.     On this news, GW Pharmaceuticals stock fell $3.55, or nearly 6%, to close at $56.31 per share on January 11, 2016.

36.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired GW Pharmaceuticals securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, GW Pharmaceuticals securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by GW Pharmaceuticals or its transfer agent

and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of GW Pharmaceuticals;

- whether the Individual Defendants caused GW Pharmaceuticals to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of GW Pharmaceuticals securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

11

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

43.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- GW Pharmaceuticals securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold GW Pharmaceuticals securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of GW Pharmaceuticals securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire GW Pharmaceuticals securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for GW Pharmaceuticals securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about GW Pharmaceuticals's internal quality controls, finances, and business prospects.

50.      By virtue of their positions at GW Pharmaceuticals, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

51.      Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of GW Pharmaceuticals securities from their personal portfolios.

52.      Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of GW Pharmaceuticals, the Individual Defendants had knowledge of the details of GW Pharmaceuticals's internal affairs.

53.      The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of GW

14

Pharmaceuticals.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to GW Pharmaceuticals's quality controls, businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of GW Pharmaceuticals securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning GW Pharmaceuticals's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired GW Pharmaceuticals securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

54.     During the Class Period, GW Pharmaceuticals securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of GW Pharmaceuticals securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of GW Pharmaceuticals securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of GW Pharmaceuticals securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

57.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of GW Pharmaceuticals, and conducted and participated, directly and indirectly, in the conduct of GW Pharmaceuticals's business affairs.  Because of their senior positions, they knew the adverse non-public information about GW Pharmaceuticals's misstatement of income and expenses and false financial statements.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to GW Pharmaceuticals's financial condition and results of operations, and to correct promptly any public statements issued by GW Pharmaceuticals which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

16

public filings which GW Pharmaceuticals disseminated in the marketplace during the Class Period concerning GW Pharmaceuticals's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause GW Pharmaceuticals to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of GW Pharmaceuticals within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of GW Pharmaceuticals securities.

61.     Each of the Individual Defendants, therefore, acted as a controlling person of GW Pharmaceuticals. By reason of their senior management positions and/or being directors of GW Pharmaceuticals, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, GW Pharmaceuticals to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of GW Pharmaceuticals and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GW Pharmaceuticals.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 21, 2016

<div style="margin-left:40%">

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

</div>

18

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.   I, _Edward W. Urban_____, make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities

Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against GW Pharmaceuticals PLC ("GW Pharmaceuticals" or

"the Company") (Nasdaq: GWPH) and, authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire GW Pharmaceuticals PLC securities at the direction of plaintiffs'

counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired GW Pharmaceuticals PLC securities during the class period, including providing testimony at

deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate

lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in GW

Pharmaceuticals PLC securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as

set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed _____01-15-16_____
               **(Date)**

_____
               **(Signature)**

_____
               **(Type or Print Name)**

**GW PHARMACEUTICALS PLC (GWPH)**                                    **Urban, Edward W.**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 04/29/2015* | Purchase | 20 | $121.3900 |

*Settlement date